## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

IN RE:                                                       CASE NO.: 18-50307-KKS
                                                             CHAPTER 7

**Roger Allen Mills,**

     **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

### NOTICE OF OPPORTUNITY TO
### OBJECT AND FOR HEARING

     Pursuant to Local Rule 2002-2, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the proof of service plus an additional three days for service if any party was served by U.S. Mail, or such other period as may be specified in Fed. R. Bankr. P. 9006(f).

     If you object to the relief requested in this paper, you must file an objection or response electronically with the Clerk of the Court or by mail at 110 E. Park Avenue, Suite 100, Tallahassee, FL, 32301 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487 and any other appropriate person within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.

     If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.

---

     Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), Roger Allen Mills, filed a voluntary petition pursuant to Chapter 13 of the United States Bankruptcy Code on October 8, 2018. An order converting the case to a case under Chapter 7 was entered on January 14, 2019.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. § 1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and

statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3. Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4. On January 27, 2015, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $250,000.00 to Whitney Bank DBA Hancock Bank, Mississippi Corporation. The Mortgage was recorded on February 3, 2015 in Book 3672 at Page 1997 of the Public Records of Bay County, Florida.  The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5. Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements in support of right to see a lift of the automatic stay and foreclose if necessary.

6. The mortgage provides Secured Creditor a lien on the real property located at 4021 Osprey Pt Southport, Florida 32409, in Bay County, and legally described as stated in the mortgage attached in Composite Exhibit "A."

7. The terms of the aforementioned Note and Mortgage have been in default, and remain in

default, since April 1, 2017. See Secured Creditor's statement in regard to indebtedness and default, attached hereto and incorporated herein as Exhibit "B." A copy of the loan's payment history is attached hereto as Exhibit "C."

8. The appraised value of the property is $209,170.00.  See Exhibit "D" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

9. Based upon the Debtor(s)' schedules, the property is not claimed as exempt.  The Trustee has not abandoned the property.

10. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest.  Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

11. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

12. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral.  The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

13. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

14. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

15. A Proposed Order accompanies this Motion.  See Exhibit "E" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Date: April 18, 2019

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969
By: /s/ Nathalie Rodriguez_____
Nathalie Rodriguez, Esquire
Florida Bar Number: 125114
Email: nrodriguez@rasflaw.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that on April 18, 2019, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

Roger Allen Mills
4021 Osprey Point
Panama City, FL 32409

Teresa M. Dorr
Zalkin Revell, PLLC
2441 US Highway 98, Suite 109
Santa Rosa Beach, FL 32459

Mary W. Colon
P.O. Box 14596
Tallahassee, FL 32317

United States Trustee
110 E. Park Avenue
Suite 128
Tallahassee, FL 32301

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969

By: /s/ Nathalie Rodriguez
Nathalie Rodriguez, Esquire
Florida Bar Number: 125114
Email: nrodriguez@rasflaw.com

**COMPOSITE EXHIBIT "A"**

**NOTE**

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

| January 27, 2015 | PANAMA CITY, | Florida |
|---|---|---|
| [Date] | [City] | [State] |

4021 Osprey Point, Southport, FL 32409
[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. **$250,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Whitney Bank DBA Hancock Bank, Mississippi Corporation.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **3.250 %**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **March 1, 2015.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **February 1, 2045,** I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **P.O. Box 1360**
**Gulfport, MS 39502**

or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
My monthly payment will be in the amount of U.S. **$1,088.02.**

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **4.000 %** of my overdue payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. ALLONGE TO THIS NOTE

If an allonge providing for payment adjustments or for any other supplemental information is executed by me together with this Note, the covenants of the allonge are incorporated into and amends and supplements the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

☐ Graduated Payment Allonge     ☐ Other [Specify]

## 12. V.A. REGULATIONS

Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

## 13. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____     1/27/15 (Seal)
ROGER A MILLS                                    DATE

Lender: Whitney Bank DBA Hancock Bank
NMLS ID: ███
Loan Originator: Rita Kathleen Sengel
NMLS ID: ███

PAY TO THE ORDER OF
PACIFIC UNION FINANCIAL, LLC
_____
WITHOUT RECOURSE
WHITNEY BANK DBA HANCOCK BANK
MISSISSIPPI CORPORATION

RENEE' TOULME
VICE PRESIDENT

[Sign Original Only]

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3210 1/01 MODIFIED
Ellie Mae, Inc.                          Page 3 of 3                          V3200FLN  0211
                                                                             V3200FLN
                                                                             01/23/2015 12:41 PM PST

File # █████████
OR BK 3672 Pages 1997 - 2009
Recorded 02/03/15 15:33:09
Bill Kinsaul, Clerk
Bay County, FL
DOC STMP-M:  $875.00
INT TAX:  $500.00
Deputy Clerk DL
Trans # 1240923

When recorded, return to:
Whitney Bank DBA Hancock Bank
Attn: Final Document Department
2510 14th Street, Suite 620
P.O. Box 1369
Gulfport, MS 39502
866-784-0396

This document was prepared by:
Deborah Fleming
Whitney Bank DBA Hancock Bank
2510 14th Street
Gulfport, MS 39501
228-822-4017

LOAN #: █████████

———————— [Space Above This Line for Recording Data] ————————

# MORTGAGE

CASE #: █████████

MIN █████████

MERS PHONE #: █████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
(A) "Security Instrument" means this document, which is dated   January 27, 2015,                together with all Riders to this document.
(B) "Borrower" is   ROGER A MILLS AND NANCY J MILLS, HUSBAND AND WIFE.

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. █████████.
(D) "Lender" is   Whitney Bank DBA Hancock Bank.

Lender is   Mississippi Corporation,                                    organized and existing under the laws of Mississippi.
Gulfport, MS 39502                                    Lender's address is   2510 14th Street, Suite 620,

(E) "Note" means the promissory note signed by Borrower and dated   January 27, 2015.                The Note states that Borrower owes Lender  TWO HUNDRED FIFTY THOUSAND AND NO/100* * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * Dollars (U.S. $250,000.00                )
plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  February 1, 2045.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010 1/01                    Initials: _____
Ellie Mae, Inc.                                              Page 1 of 10                                    FLEDEED 1212
                                                                                                            FLEDEED
                                                                                                   01/23/2015 12:41 PM PST

**LOAN #:** ████

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Condominium Rider             ☐ Second Home Rider
☐ Balloon Rider                  ☐ Planned Unit Development Rider ☐ Other(s) [specify]
☐ 1-4 Family Rider               ☐ Biweekly Payment Rider
☒ V.A. Rider

**(I)   "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or the Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the     County                                    [Type of Recording Jurisdiction] of    Bay
[Name of Recording Jurisdiction]:

**See attached legal description.**

which currently has the address of   4021 Osprey Point, Southport,

[Street] [City]

Florida  32409                    ("Property Address"):
       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

LOAN # ███████

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

Initials: _____

FLEDEED 1212
FLEDEED
01/23/2015 12:41 PM PST

LOAN # ███████

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law

Initials: ███

FLEDGED 1212
FLEDGED
01/23/2015 12:41 PM PST

requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.  Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.  Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.  Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.  Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a pro-ceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has prior-ity over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous condi-tions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be pay-able, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.  Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased

Initials:

FLEDEED 1212
FLEDEED
01/23/2018 12:41 PM PST

LOAN #: ███████

to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security

FLEDEED 1212
FLEDEED
01/23/2015 12:41 PM PST

**LOAN #** ▮▮▮▮▮

Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials: ▮▮▮

FLEB380-1212
FLEB3ED
01/23/2015 12:41 PM PST

**LOAN #:** ███████

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration

Initials: _____
FL0010EDE 0915
FLEDEDE
01/23/2015 12:41 PM PST

LOAN #: ▅▅▅▅▅

of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25. Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_Debra K Biggs_

_Kole Manno_

_Roger J Mills_      1-27-15 (Seal)
ROGER J MILLS        DATE

_Nancy J Mills_      1-28-15 (Seal)
NANCY J MILLS        DATE

Initials: 
FLUFREED 1212
FLUFREED
01/23/2015 12:41 PM PST

Loan # ███████

## INDIVIDUAL ACKNOWLEDGEMENT

STATE OF _Florida_

COUNTY/PARISH OF _Bay_

On this day personally appeared before me **ROGER A MILLS** to me known to be the individual (s) described in and who executed the within and foregoing instrument, and acknowledged that  he  signed the same as  his   free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this    27th    day of    **January, 2015.**



Notary Public for the State of _Florida_    DARLENE D DURKEE

My commission expires:  11-21-15

(Official Seal)

STATE OF _North Carolina_

COUNTY/PARISH OF _Cherokee_

On this day personally appeared before me  **NANCY J MILLS**  to me known to be the individual (s) described in and who executed the within and foregoing instrument, and acknowledged that  she  signed the same as  her   free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this   _28th_   day of    **January, 2015.**



Notary Public for the State of _North Carolina_

My commission expires:  _May 26, 2018_

(Official Seal)

**Lender:  Whitney Bank DBA Hancock Bank**
**NMLS ID:  454781**
**Loan Originator:  Rita Kathleen Sengel**
**NMLS ID:  486755**

Initial: _____

## Exhibit "A"

Lot "D", Osprey Point, as per plat thereof, recorded in Plat Book 13, Page 56, of the Public
Records of Bay County, Florida.

LOAN #: ███████
CASE #: ███████
MIN: ███████

## VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

THIS VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER is made this 27th day of January, 2015, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Deed to Secure Debt (herein "Security Instrument") dated of even date herewith, given by the undersigned (herein "Borrower") to secure Borrower's Note to Whitney Bank DBA Hancock Bank, Mississippi Corporation

(herein "Lender") and covering the Property described in the Security Instrument and located at
4021 Osprey Point
Southport, FL 32409

VA GUARANTEED LOAN COVENANT: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

If the indebtedness secured hereby be guaranteed or insured under Title 38, United States Code, such Title and Regulations issued thereunder and in effect on the date hereof shall govern the rights, duties and liabilities of Borrower and Lender. Any provisions of the Security Instrument or other instruments executed in connection with said indebtedness which are inconsistent with said Title or Regulations, including, but not limited to, the provision for payment of any sum in connection with prepayment of the secured indebtedness and the provision that the Lender may accelerate payment of the secured indebtedness pursuant to Covenant 18 of the Security Instrument, are hereby amended or negated to the extent necessary to conform such instruments to said Title or Regulations.

LATE CHARGE: At Lender's option, and as allowed by applicable state law, Borrower will pay a "late charge" not exceeding four per centum (4%) of the overdue payment when paid more than fifteen (15) days after the due date thereof to cover the extra expense involved in handling delinquent payments, but such "late charge" shall not be payable out of the proceeds of any sale made to satisfy the indebtedness secured hereby, unless such proceeds are sufficient to discharge the entire indebtedness and all proper costs and expenses secured hereby.

GUARANTY: Should the Department of Veterans Affairs fail or refuse to issue its guaranty in full amount within 60 days from the date that this loan would normally become eligible for such guaranty committed upon by the Department of Veterans Affairs under the provisions of Title 38 of the U.S. Code "Veterans Benefits," the Mortgagee may declare the indebtedness hereby secured at once due and payable and may foreclose immediately or may exercise any other rights hereunder or take any other proper action as by law provided.

TRANSFER OF THE PROPERTY: This loan may be declared immediately due and payable upon transfer of the property securing such loan to any transferee, unless the acceptability of the assumption of the loan is established pursuant to Section 3714 of Chapter 37, Title 38, United States Code.

An authorized transfer ("assumption") of the property shall also be subject to additional covenants and agreements as set forth below:

   (a) ASSUMPTION FUNDING FEE: A fee equal to one-half of 1 percent (.50%) of the balance of this loan as of the date of transfer of the property shall be payable at the time of transfer to the loan holder or its authorized agent, as trustee for the Department of Veterans

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
Ellie Mae, Inc.                                    Page 1 of 2                                    Initials: 
P8761ASR    0311
P8761ABR
01/23/2015 12:41 PM PST

LOAN #: ███████

Affairs. If the assumer fails to pay this fee at the time of transfer, the fee shall constitute an additional debt to that already secured by this instrument, shall bear interest at the rate herein provided, and, at the option of the payee of the indebtedness hereby secured or any transferee thereof, shall be immediately due and payable. This fee is automatically waived if the assumer is exempt under the provisions of 38 U.S.C. 3729 (c).

(b) ASSUMPTION PROCESSING CHARGE: Upon application for approval to allow assumption of this loan, a processing fee may be charged by the loan holder or its authorized agent for determining the creditworthiness of the assumer and subsequently revising the holder's ownership records when an approved transfer is completed. The amount of this charge shall not exceed the maximum established by the Department of Veterans Affairs for a loan to which Section 3714 of Chapter 37, Title 38, United States Code applies.

(c) ASSUMPTION INDEMNITY LIABILITY: If this obligation is assumed, then the assumer hereby agrees to assume all of the obligations of the veteran under the terms of the instruments creating and securing the loan. The assumer further agrees to indemnify the Department of Veterans Affairs to the extent of any claim payment arising from the guaranty or insurance of the indebtedness created by this instrument.

IN WITNESS WHEREOF, Borrower(s) has executed this VA Guaranteed Loan and Assumption Policy Rider.

_____    1-27-15 (Seal)
ROGER A MILLS                                        DATE

_____    1-28-15 (Seal)
NANCY J MILLS                                        DATE

VA GUARANTEED LOAN AND ASSUMPTION POLICY RIDER
Ellie Mae, Inc.                              Page 2 of 2

Initials: _____
P8781ASR  0311
P8781ASR
01/23/2015 12:41 PM PST

Prepared by and Return To:
Edward A. Hutchison, Esq.
Burke Blue Hutchison Walters & Smith, P.A.
221 McKenzie Avenue
Panama City, FL 32401

File #
OR BK 3572 Pages 1995 - 1996
Recorded 02/03/15 16:33:00
Bill Kinsaul, Clerk
Bay County, FL
DOC STMP-D: $1750.00
Deputy Clerk DL
Trans # 1240923

File No.

Parcel I

Based On : $250,000.00

Documentary Stamps Collected: $1,750.00

## WARRANTY DEED

This indenture made this 27th day of January, 2015, between Nolan Peters, whose post office address is: 1906 Cumberland Avenue SW  , Decater, AL 35603, Grantor*, and Roger A. Mills and Nancy J. Mills, husband and wife whose Post Office address is: 4021 Osprey Point  , Southport, FL 32409 Grantee*.

WITNESSETH, That Grantor, for and in consideration of the sum of TEN DOLLARS AND 00/100'S ($10.00) Dollars and other good and valuable considerations to Grantor in hand paid by said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to Grantee and Grantee's heirs and assigns forever the following described land, to-wit:

Lot "D", Osprey Point, as per plat thereof, recorded in Plat Book 13, Page 56, of the Public Records of Bay County, Florida.

Subject to easements, restrictions and covenants of record and taxes for the current year, but mention herein does not serve to reimpose same.

* "Grantor" and "Grantee" are used for singular or plural, as context requires.

SAID PROPERTY IS NOT THE HOMESTEAD OF THE GRANTOR UNDER THE LAWS AND CONSTITUTION OF THE STATE OF FLORIDA, IN THAT NEITHER GRANTOR NOR ANY MEMBERS OF THE HOUSEHOLD OF GRANTOR RESIDE THEREON.

And Grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all persons whomsoever.

**IN WITNESS WHEREOF,** Grantor has hereunto set Grantor's hand and seal the day and year first above written.

_Amanda Kellum_

_Amanda Kellum_
Witness (Please Print Name)

_Nolan Peters_
**Nolan Peters**

_Don Cantrell_
Witness (Please Print Name)

State of    **Alabama**
County of    _Morgan_

The foregoing instrument was acknowledge before me this _26_ day of **January, 2015**
by              **Nolan  Peters**    who:

☐      is personally known to me.

☑      produced _Al. Driver license_ as
identification.

_Judith Marie Stewart_
Notary Public   _Judith Marie Stewart_
My Commission Expires:      _7-11-17_

File #█████████OR BK: 3929 PG: 1450, Pages: 1 of 1, Recorded 8/22/2017 at 10:21 AM,
Bill Kinsaul, Clerk Bay County, Florida    Deputy Clerk EG Trans # 1416343

Prepared By:
**Tiffany Bitsoi**
**1795 International Way**
**Idaho Falls, ID 83402**
And When Recorded Mail To:
**First American Mortgage Solutions**
**1795 International Way**
**Idaho Falls, ID 83402**

## FLORIDA
COUNTY OF **BAY**
LOAN NO.:█████████

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR WHITNEY BANK D/B/A HANCOCK BANK, ITS SUCCESSORS AND ASSIGNS** located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, "Assignor," does hereby grant, bargain, assign, transfer and set over unto **PACIFIC UNION FINANCIAL, LLC** located at **1603 LBJ FREEWAY, SUITE 500, FARMERS BRANCH, TX 75234**, "Assignee," its successors and assigns, that certain indenture of Mortgage bearing the date of **JANUARY 27, 2015** executed by **ROGER A MILLS AND NANCY J MILLS, HUSBAND AND WIFE**, Mortgagor, and recorded in Book **3672** at Page **1997** as Clerk's File No.█████████in Public Records in the Office of the Clerk of the Circuit Court for **BAY** County, State of **FLORIDA**, upon the following described property:

**AS DESCRIBED IN SAID MORTGAGE REFERRED TO HEREIN**

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

TO HAVE AND TO HOLD the same, unto the said Assignee, its successors and assigns, forever.

IN WITNESS WHEREOF the undersigned has caused this Instrument to be executed this **AUGUST 16, 2017.**

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

**TIFFANY BITSOI, VICE PRESIDENT**

STATE OF **IDAHO**          COUNTY OF **BONNEVILLE**          ) ss.

On **AUGUST 16, 2017**, before me, **CRISTINA GOMEZ**, personally appeared **TIFFANY BITSOI** known to me to be the **VICE PRESIDENT** of the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

**CRISTINA GOMEZ (COMMISSION EXP. 07/21/2022)**
NOTARY PUBLIC

```
CRISTINA GOMEZ
NOTARY PUBLIC
STATE OF IDAHO
```



| OHE MERG |
| --- |

# State of California
## Secretary of State

FILED [handwritten]
Secretary of State
State of California

FEB - 1 2019

## Certificate of Merger

(California Corporations Code sections
1113(g), 3203(g), 6019.1, 8019.1, 9640, 12540.1, 15911.14, 16915(b) and 17710.14)

**IMPORTANT — Read all instructions before completing this form.**   *This Space For Filing Use Only*

| 1. NAME OF SURVIVING ENTITY | 2. TYPE OF ENTITY | 3. CA SECRETARY OF STATE FILE NUMBER | 4. JURISDICTION |
| --- | --- | --- | --- |
| Nationstar Mortgage LLC | LLC | 200109410005 | Delaware |

| 5. NAME OF DISAPPEARING ENTITY | 6. TYPE OF ENTITY | 7. CA SECRETARY OF STATE FILE NUMBER | 8. JURISDICTION |
| --- | --- | --- | --- |
| Pacific Union Financial, LLC | LLC | 200425310084 | California |

9. THE PRINCIPAL TERMS OF THE AGREEMENT OF MERGER WERE APPROVED BY A VOTE OF THE NUMBER OF INTERESTS OR SHARES OF EACH CLASS THAT EQUALED OR EXCEEDED THE VOTE REQUIRED. *(IF A VOTE WAS REQUIRED, SPECIFY THE CLASS AND THE NUMBER OF OUTSTANDING INTERESTS OF EACH CLASS ENTITLED TO VOTE ON THE MERGER AND THE PERCENTAGE VOTE REQUIRED OF EACH CLASS. ATTACH ADDITIONAL PAGES, IF NEEDED.)*

| SURVIVING ENTITY | | | DISAPPEARING ENTITY | | |
| --- | --- | --- | --- | --- | --- |
| CLASS AND NUMBER | AND | PERCENTAGE VOTE REQUIRED | CLASS AND NUMBER | AND | PERCENTAGE VOTE REQUIRED |
| 1 membership unit | | 100% | 1 membership unit | | 100% |

10. IF EQUITY SECURITIES OF A PARENT PARTY ARE TO BE ISSUED IN THE MERGER, CHECK THE APPLICABLE STATEMENT.

[✓] No vote of the shareholders of the parent party was required.    [ ] The required vote of the shareholders of the parent party was obtained.

11. IF THE SURVIVING ENTITY IS A DOMESTIC LIMITED LIABILITY COMPANY, LIMITED PARTNERSHIP, OR PARTNERSHIP, PROVIDE THE REQUISITE CHANGES (IF ANY) TO THE INFORMATION SET FORTH IN THE SURVIVING ENTITY'S ARTICLES OF ORGANIZATION, CERTIFICATE OF LIMITED PARTNERSHIP OR STATEMENT OF PARTNERSHIP AUTHORITY RESULTING FROM THE MERGER. ATTACH ADDITIONAL PAGES, IF NECESSARY.

12. IF A DISAPPEARING ENTITY IS A DOMESTIC LIMITED LIABILITY COMPANY, LIMITED PARTNERSHIP, OR PARTNERSHIP, AND THE SURVIVING ENTITY IS NOT A DOMESTIC ENTITY OF THE SAME TYPE, ENTER THE PRINCIPAL ADDRESS OF THE SURVIVING ENTITY.

| PRINCIPAL ADDRESS OF SURVIVING ENTITY | CITY AND STATE | ZIP CODE |
| --- | --- | --- |
| 8950 Cypress Waters Blvd | Coppell, Texas | 75019 |

13. OTHER INFORMATION REQUIRED TO BE STATED IN THE CERTIFICATE OF MERGER BY THE LAWS UNDER WHICH EACH CONSTITUENT OTHER BUSINESS ENTITY IS ORGANIZED. ATTACH ADDITIONAL PAGES, IF NECESSARY.

| 14. STATUTORY OR OTHER BASIS UNDER WHICH A FOREIGN OTHER BUSINESS ENTITY IS AUTHORIZED TO EFFECT THE MERGER. | 15. FUTURE EFFECTIVE DATE, IF ANY | | |
| --- | --- | --- | --- |
| Section 264 of the General Corporations law of the State of Delaware | (Month) | (Day) | (Year) |

16. ADDITIONAL INFORMATION SET FORTH ON ATTACHED PAGES, IF ANY, IS INCORPORATED HEREIN BY THIS REFERENCE AND MADE PART OF THIS CERTIFICATE.

17. I CERTIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE STATE OF CALIFORNIA THAT THE FOREGOING IS TRUE AND CORRECT OF MY OWN KNOWLEDGE. I DECLARE I AM THE PERSON WHO EXECUTED THIS INSTRUMENT, WHICH EXECUTION IS MY ACT AND DEED.

| [signature]   February 1, 2019 | Amar R. Patel, Manager, Nationstar Mortgage LLC |
| --- | --- |
| SIGNATURE OF AUTHORIZED PERSON FOR THE SURVIVING ENTITY   DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |

| SIGNATURE OF AUTHORIZED PERSON FOR THE SURVIVING ENTITY   DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |
| --- | --- |
| [signature]   February 1, 2019 | Karen L. Robb, Assistant Secretary of the Manager, Nationstar Mortgage LLC |
| SIGNATURE OF AUTHORIZED PERSON FOR THE DISAPPEARING ENTITY   DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |
| [signature]   February 1, 2019 | Karen L. Robb, Manager |
| SIGNATURE OF AUTHORIZED PERSON FOR THE DISAPPEARING ENTITY   DATE | TYPE OR PRINT NAME AND TITLE OF AUTHORIZED PERSON |

For an entity that is a business trust, real estate investment trust or an unincorporated association, set forth the provision of law or other basis for the authority of the person signing: _____

OHE MERGER-1 (REV 01/2018)                                                    APPROVED BY SECRETARY OF STATE

Attachment A

**AGREEMENT
OF
NATIONSTAR MORTGAGE LLC
(a Delaware limited liability company)**

Pursuant to the provisions of Sections 17710.17(f)(1), (2) and (3) of the California Corporations Code, Nationstar Mortgage LLC (the "Company"), a Delaware limited liability company, agrees that:

1.   The Company may be served in the State of California in a proceeding for the enforcement of an obligation of any constituent entity and in a proceeding to enforce the rights of any holder of a dissenting interest or dissenting shares in a constituent domestic limited liability company or domestic or other business entity.

2.   The Company irrevocably appoints the Secretary of State of the State of California as its agent for service of process, and the address to which process may be forwarded is 8950 Cypress Waters Blvd., Dallas, TX 75019, Attention: Matt Floyd, SVP, Associate General Counsel.

3.   The Company agrees that it will promptly pay the holder of any dissenting interest or dissenting share in a constituent domestic limited liability company or domestic other business entity the amount to which that person is entitled under California law.



I hereby certify that the foregoing
transcript of____2_____ page(s)
is a full, true and correct copy of the
original record in the custody of the
California Secretary of State's office.

FEB 0 7 2019 KMK

Date:_____

ALEX PADILLA, Secretary of State



# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"PACIFIC UNION FINANCIAL, LLC", A CALIFORNIA LIMITED LIABILITY COMPANY,

WITH AND INTO "NATIONSTAR MORTGAGE LLC" UNDER THE NAME OF "NATIONSTAR MORTGAGE LLC", A LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE ON THE FOURTH DAY OF FEBRUARY, A.D. 2019, AT 12:12 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

3355698  8100M
SR# 20190700909

Authentication: 202194426
Date: 02-04-19

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered 12:12 PM 02/04/2019
FILED 12:12 PM 02/04/2019
SR 20190700909 - File Number 3355698

# State of Delaware
# Certificate of Merger

Pursuant to Title 6, Section 18-209 of the Limited Liability Company Act, the undersigned Delaware limited liability company executed the following Certificate of Merger:

**First:**   Pacific Union Financial, LLC, a California limited liability company ("**Merging LLC**") will merge into and consolidate with Nationstar Mortgage LLC, a Delaware limited liability company ("**Survivor LLC**").

**Second:**   A Merger Agreement, as defined below, has been approved and executed by the board of managers of both Merging LLC and Survivor LLC.

**Third:**   Nationstar Mortgage LLC shall be the name of the surviving Delaware limited liability company.

**Fourth:**   There will be no changes or amendments to Survivor LLC's certificate of formation, name, registered office, or registered agent as a result of the merger.

**Fifth:**   The merger of Merging LLC into Survivor LLC shall be deemed effective as of the date set forth below.

**Sixth:**   The agreement of merger between Merging LLC and Survivor LLC (the "**Merger Agreement**") is on file at Survivor LLC's place of business, which is located at 8950 Cypress Waters Blvd, Coppell, TX 75019.

**Seventh:**   A copy of the Merger Agreement will be furnished by Survivor LLC on request, without cost, to any member of Survivor LLC or any person holding an interest in any other business entity which is to merge or consolidate into Survivor LLC as part of this merger transaction.

**Eighth:**   Survivor LLC is a Delaware limited liability company, and accepts service of process in the State of Delaware in all actions, suits and proceedings.

**IN WITNESS WHEREOF**, said Survivor LLC has caused this certificate to be signed by an authorized person, the 1st day of February, A.D., 2019.

By:  _____
Authorized Person
Name:      Karen L. Robb
Title:       Assistant Secretary

# EXHIBIT "B"

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

IN RE:                                                                    CASE NO.: 18-50307-KKS
                                                                              CHAPTER 7

Roger Allen Mills,

    Debtor.

_____/

## AFFIDAVIT OF INDEBTEDNESS IN SUPPORT OF
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Affiant, _____Mary Gracia_____, being first duly

sworn according to the law, deposes and says the following:

1. I am employed as a ___Assistant Secretary___ of Nationstar

Mortgage LLC d/b/a Mr. Cooper ("Secured Creditor") and am authorized to sign this affidavit on

behalf of Secured Creditor. This affidavit if provided in support of the Motion for Relief from

the Automatic Stay ("Motion") filed contemporaneously herewith.

2. I base this Affidavit on my personal knowledge, gained through review of Secured

Creditor's business records regarding the Note, Mortgage, and other loan documents securing the

real property located at 4021 Osprey Pt Southport, Florida 32409.

3. Secured Creditor is responsible for the collection of this loan transaction and pursuit of

any delinquency in payments.

4. In the regular course of business, Secured Creditor receives payments on mortgage loan

accounts, advances sums of money called for by the loan documents and engages in other

transactions concerning the mortgaged property, pursuant to the loan documents. Each such

payment, advance and other transaction is recorded in the records of Secured Creditor at or near

the time of its occurrence, by or from information transmitted by a person with knowledge of its

occurrence. These transactions are regularly conducted business activities and recording their

occurrence is a regular practice of said business activities.

5. There has been a default under the terms of the subject loan documents in that the regular

payment due April 1, 2017, and all subsequent payments, have not been made.

6. Debtor(s) owe principal in the amount $239,385.65, plus interest accruing from March 1, 2017, pre-petition late charges, advances, and other amounts provided for under the terms of the loan documents.

7. I have reviewed the documents attached as exhibits to the Motion and they are true and accurate copies of the original documents as imaged in our system and provided to our attorney.

8. This Affidavit is signed under penalty of perjury as being true and correct based on my personal knowledge of Secured Creditor's business records. I am over 18 years of age and am competent to testify about the facts contained herein.

**FURTHER AFFIANT SAYETH NAUGHT.**

Executed this _16_ day of _April_, _2019_.

Name: _Mary Gracia_
Title: _Assistant Secretary of Nationstar Mortgage LLC d/b/a Mr. Cooper_
Affiant

**STATE OF** _Texas_
**COUNTY OF** _Denton_

SUBSCRIBED and SWORN to before me on this _16_ day of _April_, 20 _19_, by ___Mary Gracia___, ⋈ known to me (☐ or satisfactorily proven to me through production of _____ as identification) to be the person(s) who appeared before me.

(SEAL)

_Chastity Wilson_
(Type or print name below signature)
Notary Public, State of _Texas_
Commission No.: _____
My Commission Expires: _____

CHASTITY WILSON
Notary Public, State of Texas
Comm. Expires 05-21-2019
Notary ID 130235636

**EXHIBIT "C"**

**Mortgage Proof of Claim Attachment (12/15)**　　　　　　　　　　　　　　　　　　　　　　　Page 1 of

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.  See separate instructions

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4:  Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case Number: | 18-50307 | Principal Balance: | 239385.65 | Principal & Interest Due: | 20672.38 | Principal & Interest | 1088.02 |
| Debtor 1: | Roger Allen Mills | Interest Due: | 12467.67 | Prepetition fees due: | 8379.67 | Monthly Escrow | 357.23 |
| Debtor 2: | | Fees, Costs Due: | 8379.67 | Escrow deficiency for funds advanced: | 10340.26 | Private Mortgage Insurance | 0.00 |
| Last 4 digits used to Identify | ▆▆▆▆ | Escrow deficiency for funds advanced: | 10340.26 | Projected escrow shortage: | 3167.07 | | |
| Creditor: | Pacific Union Financial,LLC | Less total funds on hand: | 0.00 | Less funds on hand: | 0.00 | Total Monthly Payment | 1445.25 |
| Servicer: | Pacific Union Financial,LLC | Total Debt: | 270573.25 | Total prepetition arrearage | 42559.38 | | |
| Fixed accrual, Daily simple interest or other: | FIXED | | | | | | |

## Part 5:  Loan Payment History from First Date of Default

| | | Account Activity | | | | | How funds were applied/Amount Incurred | | | | | Balance after amount received or incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual Payment amount | Funds received | Amount Incurred | Description | Contractual due date | Prin, int & esc past due balance | Amount to principal | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued interest balance | Escrow Balance | Fees / Charges Balance | Unapplied Funds Balance |
| 2/1/17 | 2,565.60 | | | Payment Due | 2/1/17 | 2,565.60 | | | | | | 240,261.46 | | (5,848.94) | | |
| 2/1/17 | | | | Payment Made | 2/1/17 | - | 437.31 | 650.71 | 1,477.58 | | | 239,824.15 | | (4,371.36) | - | - |
| 2/6/17 | | | | NSF Fee Waived | 2/1/17 | - | | | | - | | 239,824.15 | | (4,371.36) | - | - |
| 2/6/17 | | | | NSF Reversal | 2/1/17 | 2,565.60 | (437.31) | (650.71) | (1,477.58) | | | 240,261.46 | | (5,848.94) | - | - |
| 2/16/17 | | | | Late Fee Assessed | 2/1/17 | 2,565.60 | | | | 102.62 | | 240,261.46 | | (5,848.94) | 102.62 | - |
| 3/1/17 | 2,565.60 | | | Payment Due | 2/1/17 | 5,131.20 | | | | | | 240,261.46 | | (5,848.94) | 102.62 | - |
| 3/16/17 | | | | Late Fee Assessed | 2/1/17 | 5,131.20 | | | | 102.62 | | 240,261.46 | | (5,848.94) | 205.24 | - |
| 3/28/17 | | | | INSPECTION | 2/1/17 | 5,131.20 | | | | 16.50 | | 240,261.46 | | (5,848.94) | 221.74 | - |
| 4/1/17 | 2,565.60 | | | Payment Due | 2/1/17 | 7,696.80 | | | | | | 240,261.46 | | (5,848.94) | 221.74 | - |
| 4/17/17 | | | | Late Fee Assessed | 2/1/17 | 7,696.80 | | | | 102.62 | | 240,261.46 | | (5,848.94) | 324.36 | - |
| 5/1/17 | 2,356.74 | | | Payment Due | 2/1/17 | 10,053.54 | | | | | | 240,261.46 | | (5,848.94) | 324.36 | - |
| 5/1/17 | | | | INSPECTION | 2/1/17 | 10,053.54 | | | | 16.50 | | 240,261.46 | | (5,848.94) | 340.86 | - |
| 5/16/17 | | | | Late Fee Assessed | 2/1/17 | 10,053.54 | | | | 94.27 | | 240,261.46 | | (5,848.94) | 435.13 | - |
| 5/24/17 | | | | INSPECTION | 2/1/17 | 10,053.54 | | | | 16.50 | | 240,261.46 | | (5,848.94) | 451.63 | - |
| 5/31/17 | | 5,131.20 | | Payment Made | 2/1/17 | 7,487.94 | 437.31 | 650.71 | 1,477.58 | | | 239,824.15 | | (4,371.36) | 451.63 | - |
| 5/31/17 | | | | Payment Made | 3/1/17 | 4,922.34 | 438.50 | 649.52 | 1,477.58 | | | 239,385.65 | | (2,893.78) | 451.63 | - |

**Part 5:  Loan Payment History from First Date of Default**

| | | Account Activity | | | | How funds were applied/Amount Incurred | | | | | Balance after amount received or incurred | | | | |
| A. Date | B. Contractual Payment amount | C. Funds received | D. Amount Incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal Balance | N. Accrued interest balance | O. Escrow Balance | P. Fees / Charges Balance | Q. Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6/1/17 | 2,356.74 | | | Payment Due | 4/1/17 | 7,279.08 | | | | | | 239,385.65 | | (2,893.78) | 451.63 | |
| 6/13/17 | | | 4,741.57 | Hazard Insurance Disbursement | 4/1/17 | 7,279.08 | | | | | | 239,385.65 | | (7,635.35) | 451.63 | |
| 6/16/17 | | | | Late Fee Assessed | 4/1/17 | 7,279.08 | | | | 94.27 | | 239,385.65 | | (7,635.35) | 545.90 | - |
| 6/26/17 | | | | INSPECTION | 4/1/17 | 7,279.08 | | | | 16.50 | | 239,385.65 | | (7,635.35) | 562.40 | - |
| 7/1/17 | 2,356.74 | | | Payment Due | 4/1/17 | 9,635.82 | | | | | | 239,385.65 | | (7,635.35) | 562.40 | - |
| 7/17/17 | | | | Late Fee Assessed | 4/1/17 | 9,635.82 | | | | 94.27 | | 239,385.65 | | (7,635.35) | 656.67 | - |

# EXHIBIT "D"



# Bay County Property Appraiser

**Dan Sowell, CFA**

Main Office | 860 W. 11th Street | Panama City, Florida 32401 | (850)248-8401
Beach Office | 301 Richard Jackson Blvd | Panama City Beach, Florida 32407 | (850)248-8470

| Sales In Area | Previous Parcel | Next Parcel | Return to Main Search | Bay Home |
|---|---|---|---|---|

## Owner and Parcel Information

| | | | |
|---|---|---|---|
| Owner Name | MILLS, ROGER A | Today's Date | March 21, 2019 |
| Mailing Address | 4021 OSPREY POINT | Parcel Number | ███████ |
| | SOUTHPORT, FL 32409 | Tax District | Fire County Mosquito (District 55) |
| Location Address | 4021 OSPREY POINT | 2018 Final Millage Rates | 12.1720 |
| Property Usage | SINGLE FAM (000100) | Acreage | 0.594 |
| Section Township Range | 13-2S-14W | Homestead | Y |

Show Parcel Maps   Generate Owner List By Radius   Comparative Market Analysis   Card View Print   Show Assessment Notice

## Value Information

| | 2017 Certified Values | 2018 Certified Values |
|---|---|---|
| Building Value | $148,860 | $147,451 |
| Extra Feature Value | $7,222 | $7,222 |
| Land Value | $54,067 | $54,497 |
| Land Agricultural Value | $0 | $0 |
| Agricultural (Market) Value | $0 | $0 |
| Just (Market) Value* | $210,149 | $209,170 |
| Assessed Value | $210,149 | $209,170 |
| Exempt Value | $50,000 | $50,000 |
| Taxable Value | $160,149 | $159,170 |
| Maximum Save Our Homes Portability | $0 | $0 |
| AGL Amount | | |

"Just (Market) Value" description - This is the value established by the Property Appraiser for ad valorem purposes. This value does not represent anticipated selling price.

Tax Collector Information

## Legal Information

OSPREY POINT 113A LOT D ORB 3963 P 633

**The legal description shown here may be condensed for assessment purposes. Exact description should be obtained from the recorded deed.**

## Building Information

| Type | Total Area | Heated Area | Exterior Wall | Roof Cover | Interior Wall | Flooring |
|---|---|---|---|---|---|---|
| SFR GOOD | 3,463 | 2,495 | CEDAR / COMMON BRK | COMP SHNGL | DRYWALL | SHT VINYL / CARPET |
| Heating Type | A/C Type | Baths | Bedrooms | Stories | Actual Year Built | Effective Year Built |
| AIR DUCTED | CENTRAL | 3 | 3 | 1 | 1984 | 1990 |

Show Building Sketch

## Extra Features Data

| Description | Number of Items | Unit Length x Width x Height | Units | Effective Year Built |
|---|---|---|---|---|
| FIRP INPUT | 1 | 0 x 0 x 0 | 1 UT | 1984 |
| DRIVE/WALK INPUT | 1 | 0 x 0 x 0 | 1 UT | 1984 |
| DOCK INPUT | 1 | 90 x 3 x 0 | 1 UT | 1984 |
| BOAT HOUSE RES INPUT | 1 | 20 x 12 x 0 | 1 UT | 1984 |
| DRIVE NV | 1 | 0 x 0 x 0 | 1 UT | 2009 |
| DECK,WOOD | 1 | 14 x 12 x 0 | 168 SF | 2014 |
| WOOD WALK NV | 1 | 0 x 0 x 0 | 1 UT | 2014 |

## Land Information

| LAND USE | NUMBER OF UNITS | UNIT TYPE | Frontage | Depth |
|---|---|---|---|---|
| ███████ | ███████ | | | |

**EXHIBIT "E"**

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

IN RE:                                                    CASE NO.: 18-50307-KKS
                                                         CHAPTER 7

**Roger Allen Mills,**

   **Debtor.**

_____/

### ORDER GRANTING NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER's
### MOTION FOR RELIEF FROM THE AUTOMATIC STAY
### SERVED ON NEGATIVE NOTICE

THIS CASE came on consideration without a hearing on Nationstar Mortgage LLC d/b/a

Mr. Cooper's ("Secured Creditor") Motion for Relief from Stay (Docket No. ___).  No response

has been filed in accordance with Local Rule 2002-2.  Accordingly, it is:

   **ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. §§ 362, 1201 and 1301, is terminated as to the
   Secured Creditor's interest in the following property located at 4021 Osprey Pt Southport,
   Florida 32409 in Bay County, Florida, and legally described as:
   **Lot "D", Osprey Point, as per plat thereof, recorded in Plat Book 13,**
   **Page 56, of the Public Records of Bay County, Florida.**

3. The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured
   Creditor to exercise any and all *in rem* remedies against the property described above.
   Secured Creditor shall not seek an *in personam* judgment against Debtors.

4. The Secured Creditor made sufficient allegations and a request in the Motion to waive the
   14-day stay requirement of Bankruptcy Rule 4001(a)(3).  No objection being raised, the
   automatic stay shall be lifted immediately upon execution of this order.

**DONE AND ORDERED on** _____

_____
**KAREN K. SPECIE**
**U.S. Bankruptcy Judge**

Attorney, Nathalie Rodriguez, is directed to serve a copy of this order on interested parties and file a certificate of service within 3 business days of entry of the order.

*Prepared By:*
*Nathalie Rodriguez*
Attorney for Secured Creditor
Robertson, Anschutz & Schneid, PL
6409 Congress Ave., Suite 100
Boca Raton, FL 33487